# CHARLESTON.

## HOUSTON *v.* McNEER.

Submitted January 31, 1895.—Decided April 3, 1895.

1. ASSIGNMENT OF BOND—WITHOUT RECOURSE—FALSE REPRESENTATION.

    The plaintiff took from the defendant a written assignment without recourse of a bond on M., and sued to recover his money back on the ground of fraudulent representation. To avoid such contract, the representation must be of a material fact, and be false within the knowledge of defendant, and be made with intent on his part that plaintiff should act upon it, which representation the plaintiff, in ignorance of its falsity, relies upon, and is thereby misled to his injury and damage.

2. ASSIGNMENT OF BOND—WITHOUT RECOURSE—PAROL EVIDENCE.

    Such written assignment without recourse can not be changed in its terms by parol evidence.

3. ASSIGNMENT OF BOND—WITHOUT RECOURSE.

    By such contract the assignee takes upon himself all risks of collecting the money, provided the instrument assigned was in fact what it seemed to be —a genuine, valid, subsisting debt.

4. ASSUMPSIT—EXPRESS WARRANTY.

    General *indebitatus assumpsit* does not lie for the breach of an express contract of warranty.

A. F. MATHEWS and JOHN OSBORNE for plaintiff in error, cited 25 W. Va. 285, 286; 2 Rob. Prac. (New) 449, 450, 454, 466.

JOHN W. HARRIS for defendant in error, cited 25 W. Va. 543; 19 W. Va. 438; Big. on Fraud p. 466; 2 Rob. Prac. (New) 274; 2 Pars. Bills & Notes 21; 27 Gratt. 878.

JOS. D. LOGAN for defendant in error, cited Greenl. Ev. (14th Ed.) § 275 *et seq.;* 30 Gratt. 272; 16 W. Va. 651; 6 Gratt. 633-34; 13 Gratt. 705; 27 Gratt. 878; 2 Hen. & Mun. 189; 6 Leigh 230; 1 Pars. Conts. 263; 3 Min. Inst. 406; 1 Rob. Prac. 477; 9 Leigh 473; 5 B. Mon. 402; 31 W. Va. 428.

HOLT, PRESIDENT:

This was an action of *indebitatus assumpsit* in the Circuit

Court of Monroe county, tried on plea of *non assumpsit;*
verdict for defendant; verdict set aside; again tried, and
verdict for defendant, which the court refused to set aside,
but gave judgment, to which this writ of error was allowed
the plaintiff.

The declaration contains the common counts, including
the count for money had and received, concluding with a
special count in *indebitatus* assumpsit, as follows: "And
for that the said defendant on the——day of——, 1886,
assigned to the said plaintiff, for valuable consideration,
to wit, four hundred and fifteen dollars, then and there paid
to the said defendant by the said plaintiff, a certain note for
the sum of four hundred and ninety nine dollars and forty
five cents, executed to the said defendant by one R. T. McNeer
on the 7th day of January, 1886, and due and payable on
demand; and the plaintiff avers that at and before the said
assignment the said defendant told the plaintiff, and repre-
sented to him, that he, the said defendant, was not indebted
to the said R. T. McNeer in any way; that there were no off-
sets to the said note; that the said note was then immedi-
ately collectible, and that no objection could be made by
the said R. T. McNeer to its immediate payment; that in
consideration of said representation the plaintiff took the
said note without recourse. And the plaintiff further avers
that the said statements and representations were untrue,
and well known so to be by the defendant; that the de-
fendant was at the date of the said assignment, and after-
wards, indebted to the said R. T. McNeer to an amount
greater than that of the said note, so that the said R. T. Mc-
Neer refused to pay the said note on account of the said in-
debtedness, when thereunto afterwards requested by the
said plaintiff, and that it would have been a vain thing for
the said plaintiff to have sued the said R. T. McNeer. And
the plaintiff avers that, by reason of the said false state-
ments and representations, the said plaintff suffered loss
to the amount of the said sum of money paid to the said de-
fendant; and the said defendant became liable to pay to the
plaintiff the said sum, with the interest due thereon. And
the said defendant, afterwards, in consideration of the prem-

ises, respectively promised to pay the plaintiff the said sums respectively upon demand."

The bond assigned by defendant, McNeer, to plaintiff, Houston, with the assignment thereof, without recourse, is as follows: "On demand, for value received, I promise to pay A. A. McNeer the just and full sum of four hundred and ninety nine dollars and forty five cents. Witness my hand and seal this seventh day of January, 1886.

"R. T. McNEER    (Seal.)

"Assigned without recourse.

"A. A. McNEER,<br>"A. C. HOUSTON."

The only witnesses examined were plaintiff and defendant on their own behalf. Plaintiff's evidence tends to prove that the debtor, R. T. McNeer, was insolvent. He bought the note for the purpose of letting R. W. Bobbitt have it, who was indebted to R. T. McNeer, but such object was not made known to defendant. Plaintiff agreed to take the note if no objection of any sort could be made to its immediate payment and defendant told him that no objection at all could be made to its immediate payment, that R. T. McNeer owed him (defendant) still more besides the amount of that note. Thereupon plaintiff took it without recourse with that understanding, and let Bobbitt have it in the same way. Bobbitt offered the note in part payment to R. T. McNeer in his settlement with him, but R. T. McNeer refused to take it. Plaintiff then took it back from Bobbitt, and wrote to defendant, A. A. McNeer, about the matter, who came to see plaintiff about it. Plaintiff told him that he took it with the understanding that no objection could be made to its immediate payment; that if he had known about the Calder land matter, he would not have taken it; and that defendant must take it back, which he refused to do.

The Calder land matter seems to have been a debt due to a commissioner who had sold the Calder land under a decree of court, which, as appears from argument of counsel, had been bought by R. T. McNeer at such sale; and the sale, by agreement of the commissioner and all interested, had been turned over to defendant, A. A. McNeer, and one John H.

Shrader, who, with the consent of the commissioner, assumed the payment of the purchase money, relieving R. T. McNeer from the payment thereof.

Defendant's evidence tended to prove that plaintiff agreed to take an assignment of the note without recourse, at a discount of ninety dollars; that he did not know what plaintiff wanted with it; did not tell plaintiff that no objection could be urged to its immediate payment; that plaintiff did not ask anything of the kind; that he did not owe R. T. McNeer anything at the time of the assignment, but R. T. McNeer owed him more than six hundred dollars over and above the note at the time he assigned it to plaintiff; and that the Calder land matter was paid, or about paid, when he assigned the note. R. T. McNeer was not sued on the note.

Plaintiff asked the court to give the following instructions, Nos. 1 and 2, to the jury. The court refused and plaintiff excepted. No. 1: "If the jury believe from the evidence that the defendant, A. A. McNeer, represented to the plaintiff, as an inducement to the contract of assignment, that he (the defendant) was not indebted to R. T. McNeer, while at the same time he was so indebted—then the jury must find for the plaintiff." No. 2: "If the jury believe from the evidence that, as an inducement to the contract of assignment, the defendant told the plaintiff that there could be no objection on the part of R. T. McNeer to the immediate payment of the note assigned, while at the same time there were unsettled transactions between the defendant and R. T. McNeer which would prevent the immediate payment of said note by said R. T. McNeer, then the jury must find for the plaintiff."

On motion of defendant, and against plaintiff's objection, the court gave the jury the three following instructions, and plaintiff excepted: Instruction A: "The court instructs the jury that if they believe from the evidence that, in the spring of 1886, plaintiff and defendant entered upon a negotiation for the sale and assignment of the bond from R. T. McNeer to A. A. McNeer, offered in evidence in this cause, and that the result of said negotiation was the written agreement upon the back of said bond, signed by the plain-

tiff and defendant, then the legal effect of said written agreement is that if said bond was due and unpaid at the time of said agreement, the plaintiff, Houston, took upon himself the risk of collecting said bond, and the terms of said written agreement can not be changed or altered by parol evidence." Instruction B: "The court instructs the jury that if a bond is assigned without recourse, it exempts the assignor from all liability by reason of the insolvency of the maker of the bond." Instruction C: "The court instructs the jury that if a party takes a bond by assignment to him without recourse, and the amount of money called for by the bond is due at the time of the assignment, he is not entitled to recourse said bond because of any failure or inability on his part to make the money called for by the bond."

The action was not a special *assumpsit* on the representation treated as an express collateral contract of warranty, in which the fraud and deceit would have been immaterial; such contract of warranty is not made the ground of plaintiff's claim of the right of recovery; but it is an action of general *indebitatus assumpsit*, with a special statement in the last count of a legal liability growing out of and resting upon a representation, false within defendant's knowledge, made by him to plaintiff, that he (defendant) was not in any way indebted to R. T. McNeer, the maker of the note assigned; that there was no set-off to it; and that no objection could be made to its immediate payment—upon which plaintiff relied, and by which he was misled, to his injury and to his damage; and in no case in which general *assumpsit* is brought, though there may have been a special agreement, does the plaintiff legally ground his claim at all upon the special agreement or promise (or warranty) nor derive any right from it, nor make it any part of his case. He proceeds exclusively upon the implied legal engagement or obligation. See *Cutter* v. *Powell*, 2 Smith Lead. Cas. (8th Ed.) pt. 1, p. 48. Whenever, therefore, the plaintiff brings general *assumpsit*, he grounds his claim, not on the special contract (see *Robinson* v. *Welty*, this term, 40 W. Va. 385 (22 S. E. Rep. 73) but upon an existing precedent debt or liability; and this suit, therefore, can not be treated as a suit for the breach of the

contract of warranty if the representation be so regarded, but upon the proof of the tort which creates the legal liability. *Huffman* v. *Hughlett*, 11 Lee 549; Keener, Quasi-Cont. 207. See *Catts* v. *Phalen*, 2 How. 376. It may be that the plaintiff would have had the right to treat the contract of assignment as rescinded on account of its fraudulent procurement, and recover back his money in general *assumpsit*, on the count for money had and received, without proof of the *scienter* or guilty knowledge on the part of the defendant; but that question does not arise in this case. See 1 Bigelow, Frauds 520, 413.

To avoid a contract on the ground of misrepresentation, (1) the representation must be false; (2) known to be so by the person who makes it; (3) ignorance of its falsity on the part of the one to whom made; (4) with the intent on the part of the maker that it shall be acted on; (5) and the one to whom made must act upon it to his injury. See 1 Bigelow, Frauds, p. 466; *Wamsley* v. *Currence*, 25 W. Va. 543; *Crislip* v. *Cain*, 19 W. Va. 438; Bish. Cont. § 650. The representation must be as to a material fact, false to the knowledge of the maker, not known to be false by the plaintiff, who, relying upon it, has been misled to his damage.

Neither of the instructions asked for by plaintiff is based upon such a supposed state of facts as would vitiate the contract of assignment, and thereby entitle plaintiff to recover back the purchase money; and both were therefore properly refused; nor is such a state of facts shown by the evidence, certainly not by such a clear and decided preponderance against the finding of the jury as would justify the court in setting aside their verdict.

Plaintiff took the risk of insolvency. It is not pretended that the note is not genuine or had been in fact paid; only that the maker of the note claimed to have some set-off or counter-claim as the ground of his refusal to pay the assignee. But how are we to know that there was any such effectual counter-claim? Defendant, in his evidence, says there was none. There is no proof clearly showing the existence of any valid set-off against the note assigned. It is true there is some evidence about a land debt due from

A. A. McNeer and John H. Shrader to a commissioner of the court for what is called the "Calder Land;" but the evidence about it is indefinite and obscure. There is certainly nothing to show it to be a legal off-set. From what does appear the conjecture would rather be that it was not; and besides, defendant says that it had been settled. The plain and reliable test was a suit at law against the debtor, which the plaintiff declined and refused to bring. See 1 Tuck. Comm. pp. 337, 338. It is said that would have caused delay, and have rendered it useless for the purpose for which it was bought, *viz.:* to let Bobbitt have it to pay his debt with. But no such purpose was made known to the defendant, nor does any testimony, written or verbal, show that particular use of it to have been one of the terms or conditions of the assignment.

The question remains, was there any error to the prejudice of the plaintiff in the instructions given at the instance of the defendant? These three instructions construe the written contract of assignment, and give to the jury instructions as to its legal effect. Is not that a matter of law, and as such clearly within the province of the court? *Goddard* v. *Foster*, 17 Wall. 142; 2 Pars. Cont. p. 610. Do they propound the law of the case correctly? Taking them as a whole, the court says to the jury, in substance, as follows: This is a restrictive assignment; one without recourse; an agreement in writing; and therefore the terms thereof can not be changed by parol evidence. *Martin* v. *Cole* (1881) 104 U. S. 30, 39. It exempts the assignor from all liability by reason of the insolvency of the maker; and if the bond is genuine, and the amount of money it calls for was owing and unpaid at the time of the assignment, then the assignee is not entitled to recourse the bond by reason of any failure or inability on his part to make the money; that is, the assignee thereby took upon himself all risk of collecting the money, provided it was in fact what it seemed to be—a genuine, valid, subsisting debt. These instructions state the law correctly as applicable to the facts which the evidence tended to prove.

The plaintiff complains in his argument that the effect

of the instructions given, with the refusal to give those asked for by him, was to lead the jury away from the only question in the case. It may have had in some degree that effect; but if so, it could only be by regarding it as a special *assumpsit* on the representation treated as a warranty; and it was not the fault of the defendant or of the court. If it was the fault of any one, it was that of the plaintiff, who insisted on having the court give to the jury as the law of the case, in his view, what he was not entitled to have given in any view, because the facts assumed in his instructions did not make voidable the contract of assignment, and give him the right to rescind and recover back the money paid. He did not ask the court to amend his instructions, or to instruct generally on the subject, but elected to stand or fall by his legal propositions as he had framed them. Is this, the defendant's second verdict, to be set aside for no fault of his or fault of the court?

Inasmuch as the plaintiff failed to show by a suit that there was any legal set-off or counter-claim against the note, failed to show that fact in any way, and the burden of proving that fact being upon him, I do not see how the Circuit Court could have avoided giving judgment against him had the defendant demurred to the evidence.

Finally, I see no plain case of miscarriage of justice on any ground. For the reasons given, the judgment must be affirmed.