# CHARLESTON.

## KIMMEL *v.* EASTERN COAL & MINING CO.

Submitted September 9, 1924.    Decided September 16, 1924.

1. PLEADING—*"Fraud" is Conclusion of Law; Facts and Intent Constituting Fraud Must be so Specifically Pleaded as to Exclude any Reasonable Conclusion of Fair Dealing; Pleading Leaving Doubt as to Whether Allegations State Particular Fraud Charged, Insufficient.*

   Fraud is a conclusion of law. In pleading it in a suit to set aside a contract, every act, fact, and intent which constituted the fraud must be plainly and specifically set out with such certainty and precision as will exclude any reasonable conclusion of fair dealing. If from the pleading it is doubtful whether the allegations of fact amount to the particular fraud charged, it is not well pleaded. (p. 157).

   (Pleading, 31 Cyc, p. 55; Equity, 21 C. J. § 412).

2. CORPORATIONS—*Representations by Officers That Stock Would Shortly Become Valuable and That Stated Dividends Would be Paid not Ordinarily Sufficiently Fraudulent to set Aside Sale of Stock; to Render Representations by Corporate Officers Fraudulent Facts Must be Shown, Which Would Not Justify Such Representations.*

   Representation by the officers of a newly formed commercial corporation that its stock would shortly become very valuable, and that a stated dividend would be paid to the stockholders, is not ordinarily such representation as will set aside a sale of its stock as fraudulent. Such representations are generally regarded as mere expressions of opinion. To render them fraudulent, facts must be pleaded and proved which were within, or ought to have been within, the knowledge of the officers of the corporation, which would not justify such representations, and would warrant the conclusion that they were falsely made in order to sell the stock. (p. 157).

   (Corporations, 14 C. J. § 879).

3. FRAUD—*Fraud not Presumed Because Promise is Unperformed.*

   Fraud cannot be presumed because a promise or obligation is not performed. To make it available, there must be some existing, essential matter falsely misrepresented which induced the making of the contract.   (p. 157.)

   (Fraud, 26 C. J. § 25).

NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.

Case certified from Circuit Court, Mineral County.

Suit by Edward G. Kimmel against the Eastern Coal & Mining Company. Demurrer to the bill · overruled, and questions certified.

*Ruling reversed.*

*Wm. MacDonald,* for plaintiff.

*Arthur Arnold* and *W. Elliott Nefflen,* for defendant.

LIVELY, JUDGE:

Having overruled the demurrer to the bill, the court certified its ruling for review.   Is the bill sufficient?   This is the question underlying and controlling the various queries and points certified.

The bill charges in substance: (1) That defendant is a foreign corporation with authorized capital stock of $1,000,-000.00, of which from $250,000.00 to $300,000.00 has been sold including $2,500.00 to plaintiff, on which it guaranteed 8% dividends, with the agreement that it would furnish its stockholders coal at cost of· production plus thirty cents per ton, and would pay no salaries to its managing officers until all dividends were paid; (2) that plaintiff purchased 2,500 shares of stock of the par value of $2,500.00 and in payment therefor deeded to the corporation two valuable lots in the City of Keyser worth $2,500.00 being induced to do so by the express statements, representations and agreements as to the then value of the stock and the assurance that it would soon become very valuable; and with the understanding that the lots would be utilized for coal tipple, coal yard and offices in order to supply coal to its stockholders; (3) that the stock at that time did not have any real value, a fact which the corporation knew; and in selling the stock to plaintiff withheld from him the true facts as to its financial ability, the amount of its property, the kind and character of its investments with intent to deceive, but assured plaintiff that it was financially able to carry out its agreements, that its income was increasing from coal sales, and that defendant knew, or had reason to know, that its financial ability was such that it could not carry out its promises; and relying

upon said promises, representations and guaranties the stock
was purchased by plaintiff, and because of defendants failure
to make good its promises, guaranties and representations
the shares of stock are worthless and the consideration for
the lots deeded has failed; (4) that as soon as plaintiff learned
the real facts of the fraud perpetrated upon him he de-
manded a rescission of the contract and was refused; and from
all the facts he has learned about the organization of de-
fendant, the extent, character, and value of its investments,
its failure to sell all its stock and its failure to carry out
its guaranties and agreements, he avers that the exchange
of stock for his lots of land was in bad faith on the part
of defendant and was for the purpose of defrauding him;
(5) that he has received only $38.90 in dividends cover-
ing a period from October 10, 1921, to March, 1922, which
is not what was promised in the way of dividends, and
tenders the dividends so paid, together with the stock back
to defendant; that the corporation has had no meeting of
its stockholders since its organization and has given to its
stockholders no statements or information relating to its
standing and condition as required by law; (6) that de-
fendant did not have coal mines sufficient to carry out its
agreement to furnish coal to its stockholders, and was never
able financially to carry out its agreements and representa-
tions, and its failure to do so is a fraud upon plaintiff; that
defendant's president stated under oath to the Auditor of
the State, in October, 1921, that all of its stock was sold to
the Liberty Investment Company, of Cumberland, Maryland,
which statement plaintiff says was not true, as the defendant
sold stock direct to individuals and received payment there-
for; that before plaintiff discovered the falsity of defend-
ant's representations he inquired of defendant why it was
paying no dividends and why it did not erect its tipples and
coal yard on plaintiff's lots, and why it was not carrying
out its agreements, and was assured that the corporation
was doing a large business, needed its monies in the con-
duct of its business elsewhere, and that the value of its
stock was increasing, which statements were false and made
to prevent plaintiff from making investigations, and from

proceeding to recover his lots. An averment is contained in the bill to the effect that defendant has executed a deed of trust on the lots to secure payment of a note to James E. Cross, which deed was made for the purpose of hindering and embarrassing plaintiff in the assertion of his rights, in which purpose all of the parties to the trust deed participated.

The prayer is for a rescission of the contract because of the alleged fraud, cancellation of the trust deed, and reconveyance of the title of the lots to plaintiff, and for general relief.

Fraud is a conclusion of law. The facts which warrant the conclusion must be, when taken together, sufficient to make out a case of fraud and be inconsistent with any other purpose, and must be alleged with such certainty and precision as to exclude every construction except the fraudulent and wrongful purpose complained of; and if from the face of the pleading it is doubtful whether the allegations do in fact amount to that particular fraud, it is not well pleaded. Fraud is never presumed. It must be particularly alleged, as well as all the essentials which warrant it, especially when the act or acts charged as fraudulent may be, in fact, innocent. *Loomis* v. *Jackson,* 6 W. Va. 613; *Dickinson* v. *Bankers Loan & Investment Company,* 93 Va. 498. Every act, fact, and intent which necessarily entered into the alleged fraud must be plainly and specifically set out with such certainty and precision as to exclude every other construction. The bill says that because of the statements, representations and agreements made by defendant upon which plaintiff relied, he was induced to purchase the stock and deed the lots in payment therefor, and that such statements representations and agreements were false, and were made for the purpose and with the intent of defrauding plaintiff and procuring a deed to his lots for nothing. The statements, representations and agreements as set out, must be examined and analyzed in order to see whether they justify that conclusion. The conclusion of fraud must be based on the facts pleaded, and excluding any other reasonable conclusion. What are the facts pleaded? The corporation was chartered in 1920. The date of its organization is not stated. It began

selling its stock and had sold to various persons about one-third of its capital stock guaranteeing to its stockholders dividends and that it would sell them coal at cost plus thirty cents per ton, and no officer would receive any salary until the dividends were paid. It approached plaintiff and made the statement to him that its stock "would shortly become very valuable" and sold stock, taking in exchange therefor the lots, with the understanding that they would be utilized for tipple, coal yard, and office purposes; assuring plaintiff that it was financially able to carry out its guaranties and agreements, when it knew, or had reason to know, that it could not do so; and withheld from plaintiff the true facts as to the amount of its property, the character of its business, and its financial ability. The bill charges that the shares of stock when sold had no real value, a fact which the Company well knew. These are the statements, representations and agreements on which the plaintiff acted believing them to be true. The other parts of the bill detail subsequent events and results, with efforts of plaintiff to have rescission after failure of the Company to pay dividends and use the lots as agreed. It is charged that defendant failed to carry out its guaranties and agreements, which is pleaded as one of the facts pointing to fraud. The bill further avers "that from all the facts plaintiff has learned about the organization of said Company, the extent, character and value of its investments; its failure to sell all its shares of stock; to carry out its guaranties and agreements, that said negotiations of purchase of said lots were entered into in bad faith with the intent and purpose of deceiving and defrauding plaintiff." The facts learned are not set out. What they were and in what way they controverted those relied upon when the trade was made, are left to conjecture. The statement relied upon as material and false, made at the time of the sale, that its stock "would shortly become very valuable," is nothing more than an expression of opinion. Mere matters of opinion as to the prospects of profits cannot be misrepresentations. The subscriber is bound to know that such matters are mere conjecture, depending upon management and business conditions. *Swan* v. *Mathre,* 103 Iowa,

261; *Brownlee* v. *Ohio, &c.,* 18 Ind. 68; *Hughes* v. *Antietam Mfg. Co.,* 34 Md. 316; *Huffstetter* v. *Our Home &c. Co.,* 65 So. 1 (Fla.); *So. Ins. Co.* v. *Milligan,* 157 S. W. (Ky.) 37; *State Bank* v. *Mentzer,* 125 Iowa 101.    Calculations of the company that stock will pay certain dividends will not constitute false representations.    *Lane* v. *Southern Asso.,* 54 S. W. 329 (Tenn.); *First Nat. Bank* v. *Fulton,* 137 N. W. 1019 (Iowa).    See *Robertson* v. *Parks,* 76 Md. 118; *Weston* v. *Columbus So. Ry.,* 90 Ga. 289; *Johnson* v. *National Association,* 125 Ala. 465; *Stalnaker* v. *Janes,* 68 W. Va. 176. The allegation that defendant knew, or had good reason to know that it could not meet its obligations has no basis of fact pleaded on which it can be determined that it was entering upon an enterprise which it could not successfully conduct, and knew or had reason to know it could not succeed.    There is no allegation that defendant made a statement of its property or assets at the time of the trade, except that it had sold stock to the amount of $250,000.00 or $300,000.00; no allegation of mismanagement or dissipation of assets as of that or any other date.    The statement is made that defendant withheld from plaintiff the true facts as to the amount of its property, the character of its business and financial ability.    What were the true facts are not alleged; neither are the facts stated which it did allege existed as to its property, business, or financial ability which induced the trade, except that it would pay dividends and that its stock would soon become very valuable.    It is charged that from all the facts learned by plaintiff, since the purchase of stock, about the organization, the extent, character and value of its investment, its failure to sell all its shares of stock, and to perform its guaranties and agreements, the sale of stock was made to him with the intent and purpose of defrauding him.    This averment is entirely too general and states plaintiff's own conclusion.    What were the facts learned by him about the organization, the extent, character and value of the investments, which would lead him or the court to such a conclusion?    No fact is stated why it did not sell all of its stock, or why it was necessary for it to do so.    Many corporations do not sell all the capital stock,

and there is nothing inherently fraudulent in failure to do so, or in a conclusion not to do so. What fact, so learned, concerning the organization, or the character or value of its investments indicated fraudulent purposes? No fact is stated relative to its failure to meet its obligations and carry out its agreements which would convict it of fraud in making them. A failure to meet an obligation is not sufficient to establish fraud at its inception. *Love* v. *Teter,* 24 W. Va. 741. Nor can we see any fraudulent intent or purpose in the failure to use plaintiff's property for certain purposes which it proposed in the deal. No limit of time is stated in which the property was to be put to that use. The representations as to the successful conduct of the business made upon inquiry after the stock was sold are not very persuasive of a fraudulent intent existing at the time the stock was sold. *Osborne* v. *Holt,* 92 W. Va. 410, 114 S. E. 801.

There are cases where the officers of a corporation have sold stock representing the business to be in good condition and the stock valuable, on which representations the purchaser relied, when as a fact the corporation was in serious financial stress from business losses and verging on insolvency, in which it has been held that such representations were false and fraudulent, the officers knowing the condition of the corporation; and the sale of the stock set aside for fraud. *Farnsworth* v. *Muscadine Products Company,* 141 N. W. 940 (Iowa). But the basis for proving such facts must be set out in the bill or declaration. There is no averment here that the corporation was or is insolvent or in financial stress, or any fact pleaded to show that defendant was not able to carry out its obligations or that the stock had no value at the time the contract was made. Nor is there any fact alleged which points to the worthlessness of the stock now, except that the Company has not continued to pay dividends, nor has it furnished coal to its subscribers as agreed, or used the lots as agreed. We find no clear allegation that any stockholder has ever demanded coal at cost of production plus thirty cents and has been refused.

It is a general and salutary rule of pleading that the bill should state plaintiff's case with reasonable certainty, the

relief he seeks and the facts which will justify the relief, with such accuracy and clearness and with such detail of the essentials as will make his case, and will inform his adversary of what he is called upon to meet, stating, not conclusions, but the facts which justify the conclusions.   The rule has forceful and strict application when plaintiff's relief is based upon fraud alleged to have been committed by defendant.    Hoggs Equity Prin. Sec. 177; 12 R. C. L. page 416, Sec. 164; 21 C. J. 396, Sec 412.

The averments of the bill are too general.   The facts alleged are not sufficient to establish an actual or constructive intent to defraud on the part of defendant, or to exclude a construction of fair dealing.   The demurrer should have been sustained, and we so answer the questions certified.

*Ruling reversed.*